**PAY TEL SYSTEMS, INC. and National Expert Assist, Inc., Plaintiffs,**

**v.**

**SEISCOR TECHNOLOGIES, INC., and Raytheon Company, Defendants.**

**TRIDENT TECHNOLOGIES, INC. and Trident Telecommunications Systems II, Plaintiffs,**

**v.**

**SEISCOR TECHNOLOGIES, INC., Defendant.**

Nos. 88 Civ. 2078 (DC), 88 Civ. 5676 (DC).

United States District Court, S.D. New York.

Sept. 27, 1995.

not pertinent to this case. See *Friedman v. Revenue Management of New York, Inc.,* 839 F.Supp 203, 206 (S.D.N.Y.1993).

**153**

Steven M. Kramer & Associates by Steven M. Kramer, New York City, for plaintiffs.

Briggs and Morgan by Jeffrey F. Shaw, Saint Paul, MN and Mayer, Brown & Platt, New York City, for defendants.

### *MEMORANDUM DECISION*

CHIN, District Judge.

These related diversity actions arise from the sale of allegedly defective coin-operated telephones ("COTs") manufactured by defendant Seiscor Technologies, Inc. ("Seiscor"), a subsidiary of Switchcraft, Inc. ("Switchcraft"), which is a subsidiary of defendant Raytheon Company ("Raytheon"). The cases were consolidated for discovery, and before the Court are defendants' renewed motions for summary judgment in both cases.

For the reasons stated below, the motions are granted in part and denied in part.

### *Background*

#### A. *The Facts*

##### 1. *The Pay Tel Case*

Plaintiff Pay Tel Systems, Inc. ("Pay Tel") is engaged in the business of purchasing and leasing COTs and providing coin-operated telephone services. It distributes COTs to other vendors for resale and also leases or sells COTs to "location owners," such as barber shops, hair salons and restaurants. (Pay Tel Cmplt. ¶ 2; Tr. 27).[1] Plaintiff National

Expert Assist, Inc. ("NEA") was added as a plaintiff in the third amended complaint, apparently because certain of Pay Tel's claims had been "completely assigned" to it. (Pay Tel Cmplt. ¶ 6).

Defendant Seiscor designs, manufactures and sells COTs. Plaintiffs allege that defendant Raytheon exercised "direct and complete control" over its subsidiaries, including Switchcraft, which in turn owns Seiscor. Pay Tel seeks to pierce the corporate veil to reach Raytheon by arguing, in effect, that Seiscor is the alter ego of Switchcraft and that, in turn, Switchcraft is the alter ego of Raytheon. (Pay Tel Cmplt. ¶ 3).[2]

In September 1985, Pay Tel and Seiscor entered into a "Dealer Agreement" whereby Pay Tel agreed to act as a "dealer" to sell Seiscor's COTs. (Fabrikant 6/22/94 Aff. Exh. A). The Dealer Agreement required Pay Tel, as the "Dealer," to issue a "blanket" written purchase order for a quantity of phones, which was to be the Dealer's "commitment" for six months. (*Id.*). At that time Pay Tel issued a blanket purchase order for 1,500 phones, which apparently was in addition to 500 phones that Pay Tel had previously ordered, for a total of 2,000 phones ordered. (DX J; Fabrikant 6/22/94 Aff. ¶ 1 & Exh. G). Pay Tel received only 872 COTs directly from Seiscor, for which it paid some $665,000, but these phones purportedly turned out to be defective and began to malfunction. (Pay Tel Cmplt. ¶¶ 42–44). Seiscor refused to authorize the return of the phones, and instead induced Pay Tel to purchase replacement parts from it for some $400,000. (Pay Tel Cmplt. ¶¶ 47–48).

Thereafter, in conjunction with another company, Phone Masters, Inc. ("PMI"), Seiscor manufactured a new and purportedly improved COT, which was warranted to be free from defects. (Pay Tel Cmplt. ¶ 50). Pay Tel was persuaded to purchase some 352 of the new improved Seiscor-manufactured tele-

---

1. "Pay Tel Cmplt." refers to the third amended complaint in the *Pay Tel* case, and "Tr." refers to the transcript of the oral argument of the motions on June 29, 1995. References to "Trident Cmplt." will be to the third amended complaint in the *Trident* case.

2. Although Raytheon was also a defendant in the *Trident* case earlier in this litigation, the claims against Raytheon were dropped in that case to preserve diversity of citizenship for jurisdictional purposes.

phones through PMI, for some $422,400. (Tr. 6; Pay Tel Cmplt. ¶ 57; see Fabrikant 6/22/94 Aff. ¶¶ 1, 2). The new COTs, however, also purportedly malfunctioned. (Pay Tel Cmplt. ¶¶ 58–59).

In January 1987, Seiscor announced that it was withdrawing from the business of manufacturing and selling COTs, and repudiated its agreements with Pay Tel and others. (Pay Tel Cmplt. ¶ 61).

### 2. *The Trident Case*

Plaintiff Trident Technologies, Inc. ("Trident") is engaged in the same business as Pay Tel. Certain of its activities were apparently conducted on behalf of two limited partnerships, plaintiffs Trident Telecommunications Systems ("TTS–I") and Trident Telecommunications Systems II ("TTS–II"), in which Trident was the general managing partner. (Trident Cmplt. ¶¶ 2–4).[3]

Trident entered into a dealer agreement with Seiscor, similar to Pay Tel's, in October 1985. (Exh. 3 to Pl. Mem. in Opp. to Motion). Between November 1985 and May 1986, Trident purchased 725 COTs from Seiscor. (Trident Cmplt. ¶ 39). These also were purportedly defective. (*Id.* ¶¶ 40–41). Seiscor refused to accept the return of the phones, and Trident was induced into purchasing replacement parts from Seiscor. (*Id.* ¶¶ 45–46). Eventually, Trident simply returned the COTs to Seiscor without Seiscor's approval. (*Id.* ¶ 47). Thereafter, Seiscor developed and manufactured a new, purportedly improved COT, and Trident was induced to purchase some 185 of the new phones. (*Id.* ¶¶ 48–53). The new telephones, however, also purportedly turned out to be defective. (*Id.* ¶¶ 54–55).

As noted, in January 1987, Seiscor announced that it was withdrawing from the business of manufacturing and selling COTs. It repudiated its agreements with Trident and others. (Trident Cmplt. ¶ 57).

**3.** Although TTS–I was dropped from the caption of the Third Amended Complaint in the *Trident* case, paragraph 3 thereof identifies TTS–I as a plaintiff.

### B. *Procedural History*

The *Pay Tel* case was commenced on March 25, 1988. Seiscor answered and asserted a counterclaim for goods sold and delivered. The *Trident* case was filed on August 12, 1988. Amended and second amended complaints were filed in both cases.

In March 1994, defendants moved for summary judgment in both cases. On April 26, 1994, Judge Broderick issued a Memorandum Order (signed by Judge Goettel on Judge Broderick's behalf) granting the motions and dismissing the complaints, but giving plaintiffs leave to file amended complaints.

In his decision, Judge Broderick held (1) that diversity was not complete in the *Trident* case because both TTS–I and Raytheon were "citizens" of Massachusetts, (2) that because plaintiffs had assigned certain claims to others, they had to either (a) eliminate any claims assigned to others as to which they had not reserved rights or (b) add as voluntary or involuntary plaintiffs any assignees or financial entities with any claim to title in any of plaintiffs' claims, (3) that plaintiffs had to (a) drop Raytheon as a defendant, (b) provide information to justify piercing the corporate veil, or (c) specify what discovery was needed to support their claim that the veil should be pierced, (4) that plaintiffs had to provide specifics as to their alleged damages, including specific information relating to (a) sales of defective goods, (b) costs incurred to repair those goods, (c) monies refunded or otherwise lost because of defective goods,[4] and (5) that plaintiffs had to present or identify evidence of deliberate fraud or misleading behavior.

Thereafter, plaintiffs filed third amended complaints in a timely fashion. Both third amended complaints assert four causes of action: (i) breach of contract, (ii) breach of express and implied warranties, (iii) fraud, and (iv) false advertising. Plaintiffs dropped Raytheon as a defendant in the *Trident* case,

**4.** Judge Broderick held that plaintiffs could *not* rely on the "assumption" that they held a "requirements contract" with defendants.

as directed by Judge Broderick, enabling that case to proceed in this Court.

These renewed motions followed.

### Discussion

#### A. The Breach of Contract Claims

■ In conclusory fashion, defendants argue that the breach of contract cause of action in both complaints should be dismissed because the purported breach of contract claim is duplicative of the breach of warranty claim. Defendants contend that because plaintiffs' only claim of breach of contract relates to the "quality" of the COTs, there is no breach of contract claim independent from the breach of warranty claim.

Defendants' arguments are based on a misreading of the third amended complaints. Plaintiffs contend that Seiscor breached the dealer agreements, not only by providing defective COTs, but also by failing to "provide reasonable technical backup to the Dealer" and failing to "use its best effort to meet the needs of its dealers with regard to delivery, requirements, quality of the product, and continued development of product enhancements," as set forth in the dealer agreements. Trident also relies on a "Product Improvement Agreement" that it entered into with Seiscor, pursuant to which Seiscor undertook certain obligations. Genuine issues of fact exist as to whether Seiscor breached these agreements.

#### B. The Breach of Warranty Claims

##### 1. The Purported Assignment of Pay Tel's Leases

■ Defendants argue that Pay Tel's breach of warranty claims should be dismissed because Pay Tel purportedly assigned 965 of the 1,234 leases in question and therefore lacked standing to assert any breach of warranty claims with respect to these leases. Defendants' argument is rejected, for genuine issues of fact exist as to whether Pay Tel assigned away its rights against defendants.

The language of the equipment leases is ambiguous. The leases state that "Lessor hereby agrees to assign to Lessee, solely for the purpose of making and prosecuting any said claim, all of the rights which Lessor has against supplier for breach of warranty or other representation respecting the equipment." Hence, one could reasonably interpret this language as an agreement to assign rights in the future, an agreement that was never implemented because, for example, the leases were terminated because the equipment did not operate properly.[5]

Pay Tel has also submitted an affidavit stating, under oath, that "[n]o rights under any leases ... were completely assigned. All assignments were conditional assignments where liability remained with Pay Tel." (Fabrikant 6/22/94 Aff. ¶ 3). In addition, Seiscor's dealer agreement can arguably be read as "extend[ing]" the warranty only to the "DEALER." (Fabrikant 6/22/94 Aff. Exh. A at 6). The agreements with the finance companies also contained certain reservations or were otherwise limited. (See, e.g., Fabrikant 6/22/94 Aff. Exh. C at 3 (granting only a "first lien and security interest" to the Lender)). Finally, an issue of fact exists as to whether, even assuming any rights were assigned, they reverted back after the alleged defects in the telephones resulted in Pay Tel defaulting on its obligations under the leases. While it is true that the leases are silent on any reversion of rights, that silence certainly does not preclude the common sense conclusion that if the lessees failed to pay rent because the phones did not work, Pay Tel could seek recourse from defendants.

A jury could reasonably find from this evidence that Pay Tel had not assigned away its claims for breach of warranty.

##### 2. Evidence of Breach of Warranty

■ Defendants' argument that Pay Tel and Trident have failed to submit evidence that the COTs were defective is wholly without merit. Pay Tel and Trident have indeed

---

5. In fact, it would not be reasonable to interpret this language to mean that Pay Tel had given up all its rights and that each location owner—each barber shop, for example—would have to sue defendants for breach of warranty. The economics of a suit for breach of warranty with respect to *one* telephone would make such a lawsuit highly unlikely.

submitted evidence, in the form of documents as well as affidavits, of numerous defects in the COTs. (*See, e.g.*, Pl. Mem., Exh. A ("Our major Dealer, Trident, has installed approximately 350 coin phones. We [Seiscor] have, in effect, used them as a field test bed. If they continue to experience Field failure rates in the magnitude they have so far, they will go broke.")). Defendants' observation that they have "consistently denied these allegations" of the existence of defects is irrelevant for purposes of this motion. Clearly, genuine issues of material fact exist with respect to whether the COTs were defective and whether Seiscor breached its warranties.

### 3. *Evidence of Causation*

Defendants argue that Trident has failed to present sufficient evidence of a causal connection between any alleged breach and Trident's alleged damages. I disagree. Sufficient evidence has been submitted to make the causation issue a fair one for the jury. (*See, e.g.*, Petta 4/19/94 Aff. ¶¶ 6, 7, 133, 134; Brody 9/16/94 Aff. ¶ 3).

### 4. *Notice of Breach*

Defendants argue that Pay Tel failed to give adequate notice to defendants of the purported breach of warranty, noting that the only notice alleged by Pay Tel to have been given consists of what defendants describe as "casual phone calls." Defendants cite no authority for the proposition that oral notice is insufficient, however, and Pay Tel cites a number of cases holding that oral notice will suffice. *See, e.g., T.J. Stevenson & Co. v. 81,193 Bags of Flour*, 629 F.2d 338, 359 (5th Cir.1980); *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 537 N.E.2d 624, 638 (1989); *see also K & M Joint Venture v. Smith Int'l, Inc.*, 669 F.2d 1106, 1120 (6th Cir.1982) (Holschuh, J., concurring in part and dissenting in part) (cited by defendants); U.C.C. § 2–607(3)(a). Hence, plaintiffs have submitted evidence to show that oral notice was given and issues of fact exist as to the adequacy of notice. Summary judgment is precluded on this basis as well.

### C. *The Fraud Claims*

■ Defendants argue that summary judgment should be granted with respect to the fraud claims because (i) Pay Tel assigned all rights to claims based on representations and (ii) neither Pay Tel nor Trident has presented sufficient evidence of fraud.

The argument that Pay Tel lacks standing is rejected, for the reasons set forth above in the discussion of the breach of warranty claims.

Likewise, the argument that plaintiffs have failed to submit sufficient evidence of fraud to raise an issue of fact is also rejected. In opposition to the motion, plaintiffs have submitted affidavits in which officers of Trident and Pay Tel state, under oath, that Seiscor represented to them that the COTs had been field tested and worked well. (*See, e.g.*, Fabrikant 9/20/94 Aff. ¶¶ 7(a), (b), (d); Petta 4/19/94 Aff. ¶ 46; Petta 9/21/94 Aff. ¶¶ 7, 8). Plaintiffs have also submitted two documents from which a reasonable jury could conclude that those representations were false and misleading: the internal March 20, 1986 memorandum by Phil Deck states that Trident has been used as "a field test bed" (Pl.Mem., Exh. A), and the internal September 26, 1985 memorandum by Steve Kartchner states that it would be "desireable [sic] to rework all phones," but nevertheless recommends that Seiscor "continue to ship phones, as is, until we are ready to fill orders with reworked phones." (Pl.Mem., Exh. Q). This evidence is sufficient to present a triable issue of fact, and thus this prong of defendants' motions is denied.

### D. *The False Advertising Claims*

■ Defendants seek dismissal of plaintiffs' false advertising claims on the basis that plaintiffs have "never presented any alleged misleading ads or brochures, nor . . . specifically explained how Seiscor ads or brochures were misleading, false, or reasonably relied upon." In response, plaintiffs have set forth one conclusory paragraph in their memorandum of law that fails to identify any purportedly misleading ad or brochure. (Pl. Mem. at 11). The only citation in that paragraph to any factual material is a reference to paragraph 7 of the Fabrikant 9/20/94 Affi-

davit. But that paragraph also fails to cite to any ad or brochure, and only refers to the same statements purportedly made by Seiscor that form the basis of the fraud claim. Moreover, with the possible exception of Exhibit 5, which appears to be a two-page description of the Raytheon "ST" series phone, none of the exhibits included in the appendix of exhibits to plaintiffs' memorandum of law appears to be a Seiscor ad or brochure.

Plaintiffs have not met their burden of presenting sufficient evidence to raise a genuine issue of fact as to the false advertising claims, and hence summary judgment will be granted dismissing those claims.

### E. The Claims Against Raytheon

In his decision, Judge Broderick held that plaintiffs "must drop Raytheon as a defendant, provide information which would justify piercing the corporate veil, or specify discovery needed to establish a basis for such piercing." While Raytheon has been dropped from the *Trident* case, it remains a defendant in the *Pay Tel* case. Hence, the issue is whether Pay Tel has complied with Judge Broderick's directive.

At oral argument, counsel for plaintiffs stated that he had served discovery requests on the issue of piercing the veil, to which defendants apparently had not responded. (Tr. 37–38). Under these circumstances, I cannot decide this aspect of the motion at this time, for it is possible that this discovery may produce evidence helpful to Pay Tel. Raytheon's motion for summary judgment is denied, without prejudice to renewal in 30 days from the date of this decision. Within 20 days of this decision, defendants are to respond to whatever outstanding discovery requests there are on this issue. If Raytheon renews its motion, it is to do so on the papers that have already been filed, except that it shall file a new notice of motion. Both parties may supplement the record with whatever relevant materials are produced in the remaining discovery.

### F. NEA

Defendants' argument that NEA is not a proper party is rejected. Judge Broderick specifically directed plaintiffs to add as a party any assignee with a claim to title. NEA apparently has such a claim, and thus it is a proper party plaintiff.

### G. Damages

Defendants' arguments with respect to damages are three-fold: (1) plaintiffs sustained no damages because they made a profit and derived substantial revenue from the COTs; (2) plaintiffs failed to provide, as directed by Judge Broderick, specifics of any monetary injury, such as costs incurred in providing refunds or accepting reduced payment or no payment for defective goods; and (3) the claims for damages relating to phones "not purchased" are speculative.

At oral argument, plaintiffs' counsel conceded that under Judge Broderick's decision, plaintiffs are precluded from recovering damages on a "requirements contract" basis. (Tr. 25). Nevertheless, plaintiffs contend that Judge Broderick's decision does not preclude them from seeking damages for "specific orders." They then argue that Trident should be able to seek damages based on the 875 phones it ordered and Pay Tel on the 2,000 phones it ordered. (Tr. 26).

Plaintiff has presented sufficient evidence to raise genuine issues of material fact as to damages resulting from defendants' violation of plaintiffs' rights with respect to phones actually ordered. For example, Pay Tel claims to have lost income on leases that were revoked because the phones did not work, and it claims also to have refunded approximately 1,000 deposits on orders it had for location/operator agreements. (Fabrikant 9/20/94 Aff. ¶¶ 9(a), (e), (f); *see also id.* at p. 12). Even assuming plaintiffs derived revenue and made a profit with respect to the phones, that does not mean that they were not otherwise damaged. Moreover, while the evidentiary materials submitted by plaintiffs are still somewhat conclusory, they are sufficient to present a fair issue for trial. Accordingly, the damages prong of the motions is denied.

### Conclusion

For the reasons set forth above, defendants' motions are granted with respect to

**158**

plaintiffs' false advertising claims and otherwise denied. Defendants are directed to respond to plaintiffs' outstanding discovery demands relating to the issue of piercing the corporate veil within 20 days hereof, and Raytheon may, within 30 days hereof, renew its summary judgment motion based on its contention that the corporate veil should not be pierced. Within 10 days after Raytheon renews its motion (if it does so), Trident shall submit whatever new evidentiary materials were produced in discovery that it believes are relevant to the issue of piercing the corporate veil.

SO ORDERED.